IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MINTEL LEARNING TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMBOW EDUCATION HOLDING LTD., et al., <br><br> Defendants. | CASE NO. 5:11-CV-01504-EJD <br><br> **ORDER DENYING AMBOW'S MOTION TO DISMISS** <br><br> [Re: Docket Item No. 53] |

Pending before the court is the motion of Defendant Ambow Education Holding Ltd. ("Ambow") to dismiss Mintel Learning Technology's ("Mintel") First Amended Complaint for failure to state a claim upon which relief may be granted. For the reasons set forth below, Ambow's motion is denied.

**I. BACKGROUND**

Mintel develops software and services designed to help students learn and remember information. First Am. Compl. ¶ 12. Mintel's offerings are all based on a set of core software modules which Mintel calls its "Memory Engine." Id. ¶ 14. The core modules are incorporated into both web-based services and physical devices made available for sale. Id. ¶¶ 14–15.

According to the complaint, Mintel entered into a distribution agreement in 2002 with a Chinese company called Kaidi by which Kaidi obtained the source code for Mintel's Memory

Engine. Id. ¶ 16. In 2005, Kaidi breached its agreement with Mintel by providing Mintel's source code to Ambow, which used the technology to develop a competing product. Id. ¶ 17. The complaint alleges that Ambow, through its CEO and an agent of the CEO, knew that it was acquiring Mintel's trade secrets from Kaidi. Id. ¶¶ 18–19. To bolster that allegation, Mintel points to a provision of the Kaidi–Ambow contract by which both parties agreed not to disclose "the relationship between Nuclear Explosion English [Ambow's competing product] and Mintel's products." Id. ¶ 19. Ambow's competing product allegedly incorporates Mintel's trade secrets, and Mintel complains of lost profits as a result of the competition.

## II. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must be construed in the light most favorable to the non-moving party, and all material allegations in the complaint are taken to be true. Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir. 1986). This rule does not apply to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). While a complaint does not need detailed factual allegations to survive a 12(b)(6) motion, the plaintiff must provide grounds demonstrating its entitlement to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, the plaintiff must allege sufficient factual allegations "to raise a right to relief above the speculative level." Id. This threshold is reached when the plaintiff pleads sufficient facts to allow the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Iqbal, 129 S. Ct. at 1950.

Claims for misappropriation of trade secrets are not held to the heightened pleading standard of Rule 9(b). See PhoneDog v. Kravitz, 11-CV-3474, 2011 WL 5415612 at *7 (N.D. Cal. Nov. 8, 2011).

## III. DISCUSSION

The California Uniform Trade Secrets Act prohibits misappropriation of trade secrets, which it defines as:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>> (A) Used improper means to acquire knowledge of the trade secret; or
>> (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>>> (i) Derived from or through a person who had utilized improper means to acquire it;
>>> (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>> (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>>
>> (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Cal. Civ. Code § 3426.1(b). "Improper means" include the "breach or inducement of a breach of a duty to maintain secrecy." Cal. Civ. Code § 3426.1(a).

To state a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act, a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff. Nexsales Corp. v. Salebuild, Inc., 11-CV-3195, 2012 WL 216260 at *2 (N.D. Cal. Jan. 24, 2012). Ambow moves to dismiss the complaint on the grounds that Mintel fails to sufficiently allege the second and third elements—misappropriation and resulting damages.

### A. Misappropriation

Ambow argues that the complaint does not establish Ambow's knowledge that Mintel's trade secrets were improperly disclosed.

The complaint does directly allege that Jin Huang (Ambow's founder and CEO) and Jianhua Xu (Huang's agent) knew that Ambow was acquiring Mintel's trade secrets from Kaidi in breach of Kaidi's contract with Mintel. FAC ¶ 19. Such bare allegations might be insufficient without further concrete, supporting facts. The complaint goes on to recite a provision of the contract between Ambow and Kaidi, which prohibited "disclosure to any third party by any means, whether express or implied, the relationship between Nuclear Explosion English and Mintel's products." Id.

This language of the alleged agreement between Ambow and Kaidi raises the right to relief to the level of plausibility. Though Ambow contends that it would be "pure speculation" to infer

3
CASE NO. 5:11-CV-01504-EJD
ORDER DENYING MOTION TO DISMISS

1  Ambow's knowledge of Kaidi's misconduct from the language of the contract, the contract Ambow
2  signed expressly acknowledges some connection with Mintel's products and evidences a desire to
3  keep that connection secret. The combination of the contract language with the allegation that
4  Kaidi's disclosure to Ambow was a breach of its contract with Mintel makes the inference that
5  Ambow knew it was acquiring Mintel's information from Kaidi in breach of the contract plausible.
6  Such an interpretation would qualify as misappropriation as defined at Cal. Civ. Code §
7  3426.1(b)(2)(B)(iii).

### B. Damages and Proximate Causation

To state a claim under the California Uniform Trade Secrets Act, a plaintiff must also plead that it suffered damages caused by the alleged misappropriation. The complaint states:

> Mintel has been damaged due to Defendants' misappropriation, including, but [] not limited to, its lost profits due to the direct competition from Ambow's Nuclear Explosion English and Defendants' unjust enrichment derived from the Nuclear Explosion English.

FAC ¶ 26. Ambow contends that this allegation does not establish a proximate causal link between any misappropriation and the alleged harm (lost profits and unjust enrichment) because, for example, Mintel's secrets might not have been used in Ambow's products.

While Mintel's allegation is general, Twombly and Iqbal do not strictly require plaintiffs to plead specific facts with regard to each element of every claim. Rather, a complaint need only include concrete details that make the plaintiff's theory of liability plausible and not merely speculative. While omitting facts as to a necessary element of the cause of action may often render a claim insufficient, the failure to specifically plead the amount of harm or the mechanism of causation is not necessarily fatal to a complaint.

Here, Mintel has made sufficiently detailed allegations of the existence of a valuable trade secret and its improper use. The claimed trade secret forms the core of Mintel's products and services, and Mintel alleges that Ambow's use was to improve its own competing product. Mintel further claims to have suffered some lost profits as a result of the competition. The natural inference is that Ambow's product, once improved with Mintel's secrets, competed more effectively and won some of Mintel's business.

The cases cited by Ambow on the issue of proximate causation, e.g., Computer Sciences

Corp. v. Computer Assocs. Int'l, Inc., 1999 WL 675446 (C.D. Cal Aug. 12, 1999), are orders denying summary judgment, not orders ruling on the sufficiency of pleadings. At the judgment stage, a court must be satisfied of every element of a cause of action by a preponderance of the evidence; on a motion to dismiss, a court need only find that a plaintiff's claim, taken as a whole, is "plausible." The dramatic difference in the applicable legal standards explains the difference in results.

### IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that Ambow's Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Feb. 3, 2012, ECF No. 53) is DENIED. The parties are ordered to comply with the accompanying Case Management Order setting forth a schedule for the case.

**IT IS SO ORDERED.**

Dated: March 8, 2012

EDWARD J. DAVILA
United States District Judge